**STATE of Utah, Plaintiff and Respondent,**

v.

**Fred L. EATON, Defendant and Appellant.**

**No. 14543.**

Supreme Court of Utah.

Sept. 22, 1977.

---

Fred L. Eaton, pro se.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Defendant Fred L. Eaton was convicted by a jury of unlawful distribution for value of a controlled substance,[1] to-wit: heroin. He attacks his conviction contending: (1) that improper remarks of the prosecutor had the effect of destroying his constitutional privilege of refusing to testify; and (2) that his conviction does not stand on a sound foundation of evidence because its pivotal aspect rested upon the testimony of a drug addict.

At about 1:00 p. m. on December 9, 1975, one Ken Goode, a heroin addict, who was then under the methadone cure treatment

and was working as an undercover narcotics agent for the Ogden City Police, reported to Officers Bob Mosher, Bob Searle and Gerald Bennett that there would be a heroin purchase later that day at a certain Ogden residence. After conducting a search of him and his automobile, the officers furnished Goode with $200.00 and kept him under surveillance as he drove to the designated house to buy the heroin.

The next sequence of events as testified to by Mr. Goode is: that he entered the residence and saw one Albert Ross with whom he had spoken earlier about the proposed buy. He stated that after the defendant had entered the room, Ross asked him (Goode) if he was there for the eight balloons of heroin. When Goode replied that he was, Ross motioned to the defendant who placed the heroin on a table. Goode offered the $200.00 to Ross, but Ross told him to give the money to the defendant. He did so, picked up the heroin and took it back to the officers, who were watching and waiting for him. The defendant was then arrested and charged with the offense.

The error of principal concern here is defendant's claim of improper remarks of the prosecutor during his argument to the jury. The prosecutor stressed the fact that only the prosecution's key witness (the alleged buyer Ken Goode) and the defendant "really knows what took place in that house;" and then asked " . . . What does the defendant tell us?" He also stated that: "I listened to the entire defense in this case and never heard one shred of evidence from the defendant to prove any motive any reason that showed that Ken Goode was out to get blacks in this community."

Defendant urges that the statements of the prosecutor had the effect of depriving him of his constitutional privilege of refusing to give evidence against himself.[2] In response thereto the state relies

---

1. Sec. 58–37–8(1)(a)(i), U.C.A.1953.

2. Art. I, Sec. 12, Utah Const.; Amdt. V, U.S. Const.

on the doctrine of *State v. Kazda* [3] that the prosecution has the right and the duty to analyze the whole evidence and to point out the strengths of its own case and the weaknesses in the defendant's.[4] We approve and reaffirm that duty and privilege of analyzing the whole evidence as a general proposition. However, there is a point beyond which it must not go in regard to the defendant's constitutional right just referred to; and this includes that it should not be impaired or destroyed by making comments on the failure of the defendant to take the witness stand.

It is to be noted that in the *Kazda* case, referred to above, the distinction we have just discussed was pointed out; and that although the prosecution did analyze the evidence, it made no such reference to the fact that the defendant did not testify as was done here. Upon a fair analysis of the prosecutor's remarks here, the conclusion cannot be escaped that it was but a thinly disguised attempt to do indirectly what the prosecutor knew could not properly be done directly: that is, to comment on the fact that the defendant had chosen not to take the witness stand; and to persuade the jury to draw inferences as to his guilt because of his exercise of that constitutional privilege.[5]

 Accepting the proposition that the remarks complained of were improper, the question of more grave concern is whether, in the light of the total picture as presented in this case, that impropriety should be regarded as a prejudicial error and justify reversal of the conviction. We note our awareness that there should be no such reversal merely to criticize a prosecutor who, perhaps in the ardor of advocacy in the trial, oversteps the bounds of propriety, nor merely because error has been committed.[6]

 Consistent with the nature of criminal proceedings and the protections accorded those accused of crime under our law, including the presumption of innocence and the burden of the state to prove the defendant's guilt beyond a reasonable doubt,[7] we believe that, on appeal, when there is a reasonable doubt as to whether the error below was prejudicial, that doubt should be resolved in favor of the defendant. This is especially true where the error involved is one which transgresses against the exercise of a constitutional right. Consequently, the rule which we have numerous times stated is that if the error is such as to justify a belief that it had a substantial adverse effect upon the defendant's right to a fair trial, in that there is a reasonable likelihood that in its absence there may have been a different result, then the error should not be regarded as harmless; [8] and conversely, if the error is such that it is clear beyond a reasonable doubt that it was harmless in that the result would have been the same, then the error should not be deemed prejudicial and warrant granting a new trial.[9]

 When the defendant's attacks on his conviction are considered in the light of the foregoing principles, and in connection with the total picture as presented in this case, including the nature of the pivotal evidence of the state, which we advert to below, we cannot conclude with the required assurance that the matters complained of were not prejudicial.

 On defendant's second main contention: that his conviction should not be sustained because the State's key witness, who testified to the buy of heroin from him, was a drug addict, this is to be said: such a condition of a witness goes to his credibility

---

3. Utah, 540 P.2d 949 (1975).

4. Id. at 951.

5. See *State v. Trusty*, 28 Utah 2d 317, 502 P.2d 113.

6. See Sec. 77–42–1, U.C.A.1953; and *State v. Myers*, 15 Utah 2d 130, 388 P.2d 801.

7. Sec. 77–31–4, U.C.A.1953.

8. *State v. Hodges*, 30 Utah 2d 367, 517 P.2d 1322 (1974); *State v. Kelbach*, 23 Utah 2d 231, 461 P.2d 297 (1969).

9. *State v. Carpenter*, 215 Kan. 573, 527 P.2d 1333 (1974); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

with the jury,[10] but not to the competency of his testimony. It is, of course, one of the circumstances to be considered in appraising the soundness of the State's case and whether the processes of justice have been fulfilled.

For the reasons stated herein, it is our conclusion that there is sufficient doubt that this has been accomplished, that the conviction should be set aside and the case remanded for the purpose of according the defendant a new trial. No costs awarded.

MAUGHAN, WILKINS and HALL, JJ., concur.

ELLETT, Chief Justice (concurring with comments):

It may be that judges have made a rule that a silent, guilty defendant will be set free if the prosecutor points out to the jury that he has not produced any evidence to counter that of the state. If it be so, it is not due to any constitutional protection. The constitutional provision reads thus:

> In criminal prosecutions . . . The accused shall not be compelled to give evidence against himself; . . .[1]

The above section was inserted to make sure that the former old English practice of compelling a defendant to give evidence against himself would not be permitted in Utah.

A defendant need not deny the charges against him other than by his plea; however, judges can be soft-headed and like ostriches place their heads in the sand so as to see nothing.

An innocent man, when evidence is given showing that he committed a crime, will tell his version of the affair or he will be faced with the assurance that his silence will be a circumstance tending to cause the jury to wonder why he does not speak up and tell the truth about the matter.

An instruction of the court to the effect that his silence is not a circumstance to be considered in determining guilt or innocence is simply a futile statement. One might as well tell the jurors that they should not breathe.

While it seems to be settled law that a prosecutor may not point out the obvious, that law appears to me to be ridiculous. I cannot imagine how it would be prejudicial to the defendant in such cases. I would change the law, but so long as I am the only one willing to do so, I am compelled to concur in the holding of the main opinion.

---

10. *State v. Wilson*, Utah, 565 P.2d 66 (1977). See *State v. Thomas*, Utah, 554 P.2d 225 (1976) where, on similar facts, such testimony was held to be sufficient to sustain the conviction.

1. Constitution of Utah, Art. I, Sec. 12.